IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| PHILLIP D. MEYER, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 04-1601-JO |
| | ) | |
| v. | ) | <u>OPINION AND ORDER</u> |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

Alan R. Unkeles
ALAN R. UNKELES, PC
1865 NW 169th Place Suite 121
Beaverton, Oregon  97006

    Attorney for Plaintiff

Karin J. Immergut
UNITED STATES ATTORNEY
Neil J. Evans
ASSISTANT UNITED STATES ATTORNEY
1000 S.W. Third Avenue Suite 600
Portland, Oregon 97204-2902

Stephanie R. Martz
SPECIAL ASSISTANT UNITED STATES ATTORNEY
SOCIAL SECURITY ADMINISTRATION
701 5th Avenue, Suite 2900 M/S 901
Seattle, Washington 98104-7075

      Attorneys for Defendant

JONES, Judge:

Plaintiff brings this action pursuant to section 205(g) of the Social Security Act (SSA), as amended, 42 U.S.C. § 405(g). He seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying his application for disability insurance benefits (DIB) under Title II. For the reasons provided below, I conclude that the decision of the Commissioner must be affirmed, and this matter dismissed.

## **ADMINISTRATIVE HISTORY**

Plaintiff filed for DIB on July 3, 2002. Tr. 47.[1] After plaintiff's claim was denied initially and upon reconsideration, he requested a hearing. Tr. 23–24. A hearing was held before an administrative law judge (ALJ) on October 22, 2003. Tr. 15, 190–228. The ALJ issued a written decision on January 29, 2004, finding plaintiff not disabled under the SSA. Tr. 12–22. After considering newly submitted evidence, the Appeals Council denied plaintiff's request for

---

[1] Citations to the official transcript of record filed with the Commissioner's Answer (# 5) on February 24, 2005, are referred to throughout as "Tr."

review (Tr. 4–7), making the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 422.210. Plaintiff sought judicial review in this court on November 3, 2004.

## **STANDARDS**

A claimant is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person can be disabled only if his or her impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The initial burden of proof rests upon the claimant to establish his or her disability. Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995). The Commissioner bears the burden of developing the record. 20 C.F.R. § 404.1512(d); DeLorme v. Sullivan, 924 F.2d 841, 849 (9th Cir. 1991).

The Commissioner's decision must be affirmed if it is based on proper legal standards and its findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999); Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. The court must weigh all of the evidence, whether it supports or detracts from the Commissioner's decision. Martinez v. Heckler, 807 F.2d 771, 772 (9th Cir. 1986). The Commissioner's decision must be upheld even if "the evidence is

susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1039–40. However, a decision supported by substantial evidence still must be set aside if the Commissioner did not apply the proper legal standards in weighing the evidence and making the decision. Reddick v. Chater, 157 F.3d 715, 720–21 (9th Cir. 1998).

## DISABILITY ANALYSIS

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for disability benefits. 20 C.F.R. § 404.1520. If a determination that the claimant is or is not disabled can be made at any step, further review is unnecessary. 20 C.F.R. § 404.1520(a)(4). Below is a summary of the five steps:

Step One. The Commissioner determines whether the claimant is engaged in substantial gainful activity. If so, the claimant is not disabled; if not, the Commissioner proceeds to step two. 20 C.F.R. § 404.1520(a)(4)(I).

Step Two. The Commissioner determines whether the claimant has a severe mental or physical impairment. If so, the Commissioner proceeds to step three; if not, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii).

Step Three. Disability cannot be based solely on a severe impairment; therefore, the Commissioner next determines whether the claimant's impairment "meets or equals" one or more of the impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1. If so, the claimant is considered disabled; if not, the Commissioner proceeds to step four. 20 C.F.R. § 404.1520(a)(4)(iii).

Step Four. The Commissioner determines whether the claimant is able to perform work he or she has done in the past. This requires the ALJ to examine the claimant's residual functional capacity (RFC) and the physical and mental demands of the claimant's past relevant

work. Lewis v. Barnhart, 281 F.3d 1081, 1083 (9th Cir. 2002). If the claimant is able to perform past relevant work, the claimant is not disabled; if the claimant demonstrates that he or she is not able to perform past relevant work, the Commissioner proceeds to step five. 20 C.F.R. § 404.1520(a)(4)(iv).

Step Five. The Commissioner determines whether the claimant is able to perform any other work. While the claimant bears the burden of proof at steps one through four, the burden shifts to the Commissioner at step five. Id. If the claimant can perform other work, the Commissioner must demonstrate that significant numbers of jobs that the claimant can perform exist in the national economy. Gomez v. Chater, 74 F.3d 967, 970 (9th Cir. 1996). The Commissioner may satisfy this burden through the testimony of a vocational expert (VE) or by reference to the Medical-Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P, app. 2. If the Commissioner does not meet this burden, or if the claimant cannot perform other work, the claimant is considered disabled. 20 C.F.R. § 404.1520(a)(4)(v).

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was forty-two years old at his alleged disability onset date. Tr. 21. He completed high school and four or more years of college, earning an aircraft mechanic's certification. Tr. 81, 107, 220. Plaintiff has past relevant vocational experience as a tree farm worker, mill worker, equipment maintenance supervisor, and inventory clerk. Tr. 21.

In August 1984, plaintiff suffered a closed head injury at his job at a lumber mill when he was struck by a board. Plaintiff alleges that he became disabled on November 1, 1988, due to organic brain syndrome, extreme fatigue, and cognitive and concentration problems secondary to his head injury. Tr. 75. Plaintiff also complains of hearing loss and tinnitus; vision problems;

gastroesophageal reflux disease (GERD); respiratory difficulties, including chronic obstructive pulmonary disease (COPD), asthma, and sinus infections; and pain in his shoulder, neck, and right arm. Tr. 128, 195, 200–02.

Plaintiff satisfied the insured status requirements for his Title II claim through December 31, 1992. Tr. 16. Therefore, plaintiff must show that he was under a disability on or before that date. See 42 U.S.C. § 423(a)(1)(A). Accordingly, the relevant period for plaintiff's disability claim—the alleged "insured period"—is between November 1, 1988, and December 31, 1992.

## THE COMMISSIONER'S DECISION

The ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of disability (step one), and that plaintiff had the severe impairments of hearing loss and post-concussion syndrome (step two). Tr. 16, 18. At step three, the ALJ found that plaintiff's impairments did not meet or equal a listed impairment. Tr. 18. At step four, the ALJ held that plaintiff's RFC made him unable to return to past work. Tr. 21. At step five, the ALJ concluded that plaintiff's RFC allowed him to perform other jobs existing in significant numbers in the national economy. Id. Therefore, the ALJ found that plaintiff was not disabled under the SSA. Id.

## ANALYSIS

Plaintiff argues that the ALJ improperly rejected the opinion of his treating physician, and improperly penalized plaintiff for failing to follow treatment recommendations. Plaintiff also contends that the Appeals Council erred by failing to consider or to explain its evaluation of

new evidence, which was submitted for the first time to the Appeals Council, during the pendency of plaintiff's request for review. These contentions are addressed in turn.

1. **The ALJ's Evaluation of the Medical Evidence**

Plaintiff alleges that the ALJ improperly rejected the opinion of plaintiff's treating physician, M. Dean Dellinger, M.D. Before addressing this contention, a review of the relevant medical history is appropriate.

In August 1984, a board struck plaintiff on the left side of the head, knocking him to the ground. Clear fluid ran from plaintiff's nose for approximately 30 to 45 minutes. Tr. 75. Plaintiff experienced some blurred vision at the time, but did not lose consciousness. Tr. 171. Plaintiff's wife stated that three weeks after the accident, she noticed that plaintiff had some problems "collecting his thoughts or getting words out." Id.

Although plaintiff did not lose significant time from work initially, he gradually developed worsening headaches and ringing in his ears (tinnitus). In March 1985, seven months after the accident, plaintiff saw neurologist Paul R. Ash, M.D., complaining of a headache that had lasted for five months. A computed tomography (CT) scan of plaintiff's head was normal with no evidence of basal skull fracture, with possible "opacification of one 7–8 mm right ethmoid cell." Tr. 118. A magnetic resonance image (MRI) of plaintiff's brain taken more than a year later, in September 1986, was also normal, although a separate MRI of his spine showed mild abnormalities. Tr. 110–11.

Dr. Ash diagnosed "headache of uncertain etiology," for which he prescribed Elavil. Tr. 172. Dr. Ash noted in July 1985 that plaintiff was "relatively headache-free" when plaintiff took Elavil in the mornings. Tr. 104. After consultative examinations of plaintiff in September 1985, his doctors noted the following: "The patient's headaches have not been severe since

7 – OPINION AND ORDER

April 10, 1985, but do still continue and are presumably at least in part alleviated by the use of Elavil. This would establish an essentially clear relationship to the prior injury." Tr. 108 (Report of Drs. Watson, Clarke, and Wilson). The doctors' report also diagnosed plaintiff as being neurologically stationary, subject to further investigation of plaintiff's complaints of auditory disturbance. Tr. 108-09.

On September 9, 1985, plaintiff's auditory disturbance brought him to Gladys Beddoe, M.D., a specialist in otolaryngology (ear, nose, and throat medicine, or ENT). Dr. Beddoe noted a "high frequency neural sensory hearing loss . . . [which] would explain the tinnitus." Tr. 174. She concluded, "No treatment is recommended." Id. She later stated that although tinnitus may occur without a known cause in some patients, plaintiff's head injury most likely precipitated his tinnitus. Tr. 175.

Plaintiff reported blurred vision immediately after the mill accident, but his vision cleared over the course of two months. Tr. 178. He also reported experiencing "floaters"[2] beginning two to three months after the accident. Id. In November 1990, plaintiff was referred to opthalmologist Robert W. Bentley, M.D., who diagnosed a posterior vitreous detachment, likely caused by plaintiff's head injury. Tr. 179. Dr. Bentley stated that the medical significance of vitreous detachment was "fairly minimal" because, while it can be a minor annoyance, it usually will not impair a person visually other than slightly increasing the risk of future eye injury. Id.

---

[2] A floater is defined as an "object in the field of vision that originates in the vitreous body." *Stedman's Medical Dictionary* 663 (26th ed. 1995).

8 – OPINION AND ORDER

Plaintiff saw Derek S. Lipman, M.D., for respiratory problems in October 1990. Dr. Lipman stated that plaintiff's nasal congestion, postnasal drainage, and intermittent headaches were caused by his head injury. Tr. 113. He noted that antibiotics had been helpful, but advised surgery because of the persistence of plaintiff's symptoms. Tr. 113–14.

His respiratory symptoms continued even after surgery, and plaintiff saw Patrick T. Goodall, M.D., in April and May 1992. Dr. Goodall stated that plaintiff's numerous evaluations "failed to document any objective evidence" that the origins of his respiratory symptoms were either infectious, allergic, or otolaryngological. Tr. 181–83. Dr. Goodall concluded: "He should therefore come to grips with the fact that he probably has an uncharacterizable condition for which symptomatic relief is the only alternative." Tr. 183.

The record also contains medical evidence from after the expiration of plaintiff's insured status on December 31, 1992. Plaintiff relies primarily on this evidence in support of his disability claim.

In May and June 2000, plaintiff saw Jeffery Olenick, M.D., complaining of a "complex syndrome with multiple problems but [whose] primary ones seem to be chronic fatigue, chronic discharge from the respiratory tract, and unquestioningly some thinking problems, at the very least, slowness." Tr. 121. Dr. Olenick concluded: "His general demeanor and the wide range of problems, his inability to work without a specific physical cause, when he never had any such problems before his injury, are strongly suggestive of a rather severe post-concussion syndrome." Id.

Dr. Dellinger, whose opinion is at issue in this case, treated plaintiff from January 2001 through May 2002. Tr. 128–55. Although gastrointestinal and skin problems first brought

plaintiff to Dr. Dellinger, he assessed "status post head trauma, 1986 [sic]. I suspect the patient has organic brain syndrome secondary to this." Tr. 143. In subsequent visits, Dr. Dellinger noted plaintiff's loud and pressured speech, occasionally inappropriate laughter, labile mood, and difficulty remembering details of office visits. Tr. 128, 130–31, 136, 143. His office notes refer frequently to plaintiff's history of organic brain syndrome. Id. On October 14, 2002, Dr. Dellinger wrote a letter in support of plaintiff's disability claim, which stated in full:

> Phillip D. Meyer is my patient at the OHSU Beaverton Health Center. Diagnoses include COPD, GERD and organic brain syndrome. The latter is the result of a cerebral concussion occurring on 8-31-84. Mr. Meyer also sustained vision loss and mood lability as a result of the closed head injury.
>
> Mr. Meyer is currently appealing the denial of his SSD/SSI application. This letter is written in support of your reconsideration of my patient's request for SSD/SSI benefits. Mr. Meyer is unable to engage in gainful employment. Thank you for your consideration of my patient's special need.

Tr. 170. Plaintiff assigns error to the ALJ's failure to adopt Dr. Dellinger's opinion on the issue of disability.

The weight given to a treating medical source's opinion depends upon the nature, length, frequency, and extent of the treatment relationship, the degree to which the treating source's opinion is supported by medical signs and laboratory findings, and its consistency with the rest of the evidence, including the claimant's daily activities. *See* 20 C.F.R. § 404.1527(d); S.S.R. 96-2p, *available at* 1996 WL 374188 (July 2, 1996). The ALJ may reject a treating physician's uncontradicted opinion on the issue of disability by stating clear and convincing reasons, supported by substantial evidence in the record, and may reject a treating source's contradicted opinion on the issue of disability by citing specific and legitimate reasons for doing so. Holohan v. Massanari, 246 F.3d 1195, 1202–03 (9th Cir. 2001). The ALJ is not bound by a physician's

opinion of a claimant's disability because this issue is reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e); S.S.R. 96-5p, *available at* 1996 WL 374183 (July 2, 1996).

In this case, the ALJ gave several reasons for giving little weight to Dr. Dellinger's opinion that plaintiff was "unable to engage in gainful employment." Tr. 170. First, the ALJ found that contemporaneous medical records from the relevant time period did not support Dr. Dellinger's opinion. Tr. 19-20. "When confronted with conflicting medical opinions, an ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). Dr. Dellinger's assessment of plaintiff's respiratory impairments conflicted with Dr. Goodall's 1992 findings, *inter alia*, that plaintiff's sinuses were normal and that his medical history failed to document any specific sinus pathology. *See* Tr. 181–83. Further, CT and MRI diagnostics of plaintiff's brain from 1985 and 1986 were normal, and the record contains no subsequent diagnostic records from which Dr. Dellinger might have detected degeneration due to organic brain syndrome. Tr. 110, 118.

The ALJ found Dr. Dellinger's opinion conclusory and unsupported by clinical or laboratory testing. Tr. 19–20. Plaintiff points out correctly that Dr. Dellinger did order chest X-rays and laboratory blood testing related to plaintiff's respiratory difficulties. *See* Tr. 146–48, 151–55. Dr. Dellinger, did not, however, connect the results of these diagnostic tools to his opinion about disability, other than ruling out specific bacterial infections as the cause of plaintiff's respiratory difficulties. Tr. 131.

Plaintiff further contends that Dr. Dellinger's objective observations *are* the clinical basis for his opinion. Even if this were the case, the record contains little discussion of how his

observations of mood lability, inappropriate laughter, and memory problems suggest a disabling organic brain syndrome, or how the symptoms of COPD and GERD are disabling to plaintiff. As the ALJ correctly determined, Dr. Dellinger's treatment notes provided little discussion of plaintiff's functional limitations as support for his assessment of their severity; the notes do not discuss the impact of organic brain syndrome, COPD, or GERD on plaintiff's activities of daily living, ability to maintain functioning, or ability to maintain concentration, persistence, or pace in a workplace setting. Tr. 20. Given these conflicts in the medical evidence, Dr. Dellinger's opinion was not entitled to controlling weight because the ALJ properly found it conclusory and unsupported by clinical findings. *See* Tonapetyan, 242 F.3d at 1149.

The ALJ also found Dr. Dellinger's opinion that plaintiff was disabled to be inconsistent with his treatment notes. *See* 20 C.F.R. § 404.1527(d)(4) (consistency of a medical source's opinion with the record as a whole is a valid ground on which to weigh that opinion). The ALJ noted Dr. Dellinger's observations that plaintiff's fatigue, GERD, and COPD all had improved with medication, including a notation that plaintiff's fatigue was "about 80% improved." Tr. 20, 131, 139–41. The ALJ found these observations to be inconsistent with Dr. Dellinger's later opinion of disability, and faulted the physician for not explaining plaintiff's level of functioning following medication. Tr. 20; s*ee also* 20 C.F.R. § 404.1527(d)(4) (extent to which medical source's opinion is explained is a valid ground on which to weigh that opinion). The court agrees, consistent with the previous discussion, that Dr. Dellinger's discussion is sparse regarding the extent of plaintiff's functional limitations and how these limitations are affected by medication.

The ALJ also noted that neither Dr. Dellinger's opinion letter nor his treatment notes provided a basis by which to determine plaintiff's impairment during the insured period. Plaintiff bears the burden of showing the severity of his impairment during the relevant period. 20 C.F.R. § 404.1512(c). Dr. Dellinger first treated plaintiff nearly nine years after his last insured date. Tr. 20. Citing <u>Smith v. Bowen</u>, 849 F.2d 1222, 1226 (9th Cir. 1988), plaintiff reminds the court that medical evidence from after the last insured date is relevant to assess disability retrospectively.[3] Here, however, the court cannot fault the ALJ for the finding that contemporaneous medical evidence of plaintiff's condition during the relevant time period was more probative than Dr. Dellinger's opinion applied retrospectively. Dr. Dellinger did not state whether or how plaintiff's condition was degenerative to help explain how the apparently benign contemporaneous assessment of brain injury might have worsened to disabling severity. He did not opine that plaintiff's condition had been stable at a disabling severity for some time. In contrast, medical evidence from after the accident but prior to the expiration of the relevant time period shows that plaintiff's brain was normal and that he was neurologically stationary subject to investigation of his auditory disturbance. Tr. 108–11. Dr. Beddoe subsequently determined

---

[3] <u>Smith v. Bowen</u>, 849 F.2d 1222 (9th Cir. 1988), is analogous in that the relevant period of alleged disability ended many years before the administrative hearings, but is otherwise factually distinct. In <u>Smith</u>, the claimant alleged a disabling seizure disorder. The only available contemporaneous medical evidence was from the claimant's family physician, who had treated plaintiff merely for common minor ailments. The physician's notes did indicate that the claimant experienced seizures but did not discuss their frequency or severity. In addition, three physicians' opinions and four lay witness statements subsequent to the relevant time period suggested that plaintiff's impairments were disabling, and that his disorder was unchanged from the relevant period. In that context, the court held that it was error to treat the contemporaneous medical evidence as the only relevant evidence of disability during the insured period. <u>Id.</u> at 1226. In this case, the contemporaneous medical evidence much more directly addresses plaintiff's allegedly disabling impairments, and the lay witness testimony is much less illuminating than in <u>Smith</u>. *See* Tr. 219–22 (testimony of plaintiff's wife).

13 – OPINION AND ORDER

that plaintiff's auditory disturbance required no further treatment. Tr. 174–75. The court concludes that, in accordance with Smith, the ALJ did not improperly reject Dr. Dellinger's opinion on the ultimate issue of plaintiff's disability.

While the court finds the ALJ's rejection of Dr. Dellinger's opinion generally sound, two matters merit further comment. First, finding Dr. Dellinger's diagnosis of organic brain syndrome somewhat dubious, the ALJ stated, "Curiously, Dr. Dellinger's treatment notes reflect at best, 'probable organic brain syndrome.'" Tr. 20. The ALJ furnished no citation for this quotation, and a review of the record reveals no such quote by Dr. Dellinger. However, Dr. Dellinger did state after plaintiff's *first* visit, "I suspect the patient has organic brain syndrome" secondary to his head injury. Tr. 143. Aside from the fact that this was Dr. Dellinger's initial examination of plaintiff, after which the definitive diagnosis of organic brain syndrome apparently sought by the ALJ would be unlikely in any event, subsequent treatment notes lack such qualifiers as "suspect" or "probable." The ALJ's characterization of Dr. Dellinger's diagnosis as somehow qualified or tentative is, at best, inaccurate.

Second, in response to Dr. Dellinger's statement that a "cerebral concussion" caused plaintiff's brain injury (Tr. 170), the ALJ stated, "there is no evidence the claimant had a concussion." Tr. 20. The court struggles to reconcile this comment with the ALJ's own factual finding that plaintiff had the severe impairment of post-concussion syndrome. Tr. 21 (Factual Finding 3). Further, while plaintiff did not have a contemporaneous diagnosis of a concussion, Dr. Olenick stated in 2000 that plaintiff appeared to suffer from a "rather severe post-concussion syndrome." Tr. 121.

While the court finds these two comments by the ALJ unwarranted, the ALJ's reasons for not crediting Dr. Dellinger's opinion are otherwise sound. The ALJ properly found conflicting medical evidence regarding plaintiff's condition during the relevant time period. Thus, the ALJ needed merely to cite specific and legitimate reasons for rejecting Dr. Dellinger's opinion on the issue of disability. Holohan, 246 F.3d at 1202–03. As discussed above, the ALJ's reasons for rejecting Dr. Dellinger's opinion were specific and are supported by substantial evidence.

**2.      Plaintiff's Failure to Follow a Prescribed Course of Treatment**

The ALJ found that plaintiff's allegations of disabling impairments were not entirely credible. Tr. 19. While plaintiff does not challenge this finding directly, he asserts the ALJ made an improper inference from plaintiff's failure to follow a prescribed course of treatment. Specifically, the ALJ noted that plaintiff's resistance to taking prescribed medications, and his failure to stop smoking when advised to do so, were inconsistent with his allegations of disabling impairments. Id. Plaintiff argues that this conclusion constituted legal error because the ALJ failed to follow S.S.R. 82-59, which requires an ALJ to find that a plaintiff has a disability that would be amenable to the treatment prescribed before denying benefits for failure to follow that course of treatment. S.S.R. 82-59, *available at* 1982 WL 31384 (1982); *see also* 20 C.F.R. § 404.1530(a), (b) (claimant must follow treatment prescribed by his or her physician, or provide a "good reason" for not doing so, in order to be found disabled).

Plaintiff's argument is inapplicable. The ALJ did not find that plaintiff was not disabled because the prescribed treatments would have eliminated his disability. Instead, the ALJ found plaintiff's testimony of disabling impairments not credible due, in part, to his failure to stop smoking and his resistance to taking prescribed medication. *See* Tr. 19. Relevant factors to

15 – OPINION AND ORDER

consider in a credibility analysis include the "type dosage, effectiveness and side effects of any medication" the claimant may have taken to alleviate symptoms. 20 C.F.R. § 404.1529(c)(3)(iv); s*ee also* S.S.R. 96-7p, *available at* 1996 WL 374186 (July 2, 1996). Unexplained or inadequately explained failures to seek treatment or to follow prescribed courses of treatment are well-established indicia of credibility. *See*, *e.g.*, Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The record also reveals that plaintiff discontinued Elavil for his headaches despite his reports in 1985 that this medication afforded him significant relief. *See* Tr. 104, 131, 133. At the hearing, plaintiff stated that Elavil had not helped his headaches. Tr. 204–05. When asked to explain this contradiction, plaintiff replied, "Well, if that were true, I'd still be taking it, you know?" Tr. 205. The ALJ also found plaintiff's completion of an aircraft mechanic's certification course during the period of alleged disability to be inconsistent with his allegations of disabling impairment. *See* 20 C.F.R. § 404.1529(a) (claimant's daily activities relevant in evaluating claimant's credibility); S.S.R. 96-7p. Thus, plaintiff's failure to comply with treatment recommendations was not the sole basis either for the ALJ's denial of benefits or for his adverse credibility determination. Plaintiff's resistance to following medical advice was a legally proper basis on which to discount his credibility.

3.      **The Additional Evidence Submitted to the Appeals Council**

Plaintiff's final arguments relate to additional evidence submitted to the Appeals Council during the pendency of plaintiff's request for review of the ALJ's written decision. After plaintiff had requested Appeals Council review, plaintiff filed for and was granted a Department of Veterans Affairs (VA) nonservice-connected pension. Tr. 188. Plaintiff submitted the VA rating decision to the Appeals Council in support of his request for review. After considering the

VA rating decision and making it part of the record, the Appeals Council denied plaintiff's request for review. Tr. 4–6.

Plaintiff argues that the Appeals Council erred by neglecting to consider the VA rating decision. This court has jurisdiction only to review a "final decision of the Commissioner of Social Security." 42 U.S.C. § 405(g). An ALJ's decision becomes the final decision of the Commissioner when the Appeals Council declines to review it. *See* 20 C.F.R. §§ 404.981, 422.210. Therefore, to the extent plaintiff asks this court to scrutinize the Appeals Council's conclusion that the additional evidence did not warrant reviewing the ALJ's decision, the plaintiff asks this court to review a non-final agency action, a matter over which it lacks jurisdiction.

This court may, however, consider the additional materials when reviewing the ALJ's decision for substantial evidence because the Appeals Council considered them in denying plaintiff's request for review of the ALJ's decision. Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000); Ramirez v. Shalala, 8 F.3d 1449, 1452 (9th Cir. 1993). The VA rating decision adds little additional evidence to the record beyond that already present in Dr. Dellinger's opinion letter. The VA decision states only its conclusions that plaintiff has organic brain syndrome, and suffers from "significant cognitive deficits" that impair his ability to work. Tr. 189. The materials relied upon by the VA in making its decision do not appear in the record before this court. *See* Tr. 188. Also, much like the opinion of Dr. Dellinger that the ALJ disregarded, the VA rating decision does not discuss plaintiff's functional limitations or whether plaintiff's organic brain syndrome is stationary or degenerative. It provides no insight into the existence or severity of plaintiff's impairments during the insured period. Thus, the VA disability

determination is weakly probative on the ultimate issue of disability. Even considering it, substantial evidence still supports the ALJ's determination.

Plaintiff also argues that this court should remand the case to the ALJ for an opportunity to consider the VA rating decision in the first instance. To be entitled to such a remand, plaintiff must show that the VA rating decision is material to the disability determination, and that he has good cause for failing to incorporate it into the record at a previous proceeding. 42 U.S.C. § 405(g). Materiality within the meaning of section 405(g) requires the new evidence to bear "directly and substantially on the matter in dispute," and to be powerful enough that it would have had a "reasonable possibility" of changing the outcome of the administrative hearing. Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001). For the same reasons that the VA rating decision does not deprive the ALJ's decision of substantial evidence—it is duplicative and does not clearly relate to plaintiff's condition during the insured period—it is not material within the meaning of section 405(g).

Plaintiff also fails to satisfy the good cause element. "A claimant does not meet the good cause requirement by merely obtaining a more favorable report once his or her claim has been denied. To demonstrate good cause, the claimant must demonstrate that the new evidence was unavailable earlier." Mayes, 276 F.3d at 463. The ALJ's written decision is dated January 29, 2004. Tr. 12. Plaintiff requested Appeals Council review on February 19, 2004. Tr. 184. He then filed his disability claim with the VA on February 27, 2004, and submitted the favorable decision to the Appeals Council. Tr. 188. Plaintiff's attempt to show good cause might be more persuasive had his VA claim been pending at the time of the ALJ's decision. However, only after the ALJ's decision was rendered, and a request for Appeals Council review was filed, did

plaintiff file his VA disability claim. Plaintiff shows no reason why he could not have obtained, or at least applied for, the VA decision earlier. He therefore fails to show either the materiality or the good cause required to justify remand.

## **CONCLUSION**

This court must affirm the Commissioner's decision when it is based on proper legal standards and the findings of fact are supported by substantial evidence in the record as a whole. The Commissioner's denial of benefits must be upheld even when the evidence is susceptible to more than one rational interpretation, so long as one interpretation supports the Commissioner's decision. For the foregoing reasons, the Commissioner's decision is based on correct legal standards and is supported by substantial evidence in the record. The Commissioner's denial of plaintiff Phillip D. Meyer's application for disability insurance benefits is AFFIRMED; accordingly, this matter is DISMISSED.

IT IS SO ORDERED.

DATED this 6th day of October, 2005.

/s/ Robert E. Jones
ROBERT E. JONES
United States District Judge

19 – OPINION AND ORDER